LAWRENCE v. BEATTIE.

1. ACTION—CONVERSION—PARTIES—JUDICATURE ACT—SHERIFFS.
    Under section 2, chap. 12, of the judicature act (3 Comp.
    Laws 1915, § 12353), providing that an action may be
    prosecuted in the name of the real party in interest, and
    that a trustee may sue in his own name without joining
    with him the party for whose benefit the action is brought,
    a declaration, in an action against the sheriff for unlaw-
    ful conversion, in the name of plaintiff "for himself and
    as trustee," is sufficient, although he held title to the
    property in trust for himself and others.

2. CHATTEL MORTGAGES—BILL OF SALE—PAYMENT—LIEN OF MORT-
    GAGEE.
    In an action against the sheriff for unlawful conversion,
    whether a bill of sale conveying to plaintiff certain grape
    juice, barrels, and a crop of grapes ready for harvest,
    the property in question, was absolute or by way of
    security merely, where plaintiff had advanced large sums
    of money to harvest the crop, convert it into juice, etc.,
    in excess of what he had received, the property was not
    subject to execution for the debts of the vendor, although
    plaintiff had received the amount owing at the time the
    bill of sale was made.

3. SAME—NATURE OF PROPERTY—GROWING CROPS.
    Where, immediately following the execution of the bill of
    sale, plaintiff went into actual possession of the growing
    crop, harvested it, manufactured it, and remained in pos-
    session thereof for more than a year, it is unimportant
    to determine whether or not said growing grapes are
    *fructus naturales* and incapable of being conveyed by a
    bill of sale or a lien created thereon by a chattel mortgage.

4. PARTNERSHIP—NAMES—ASSUMED NAME—REGISTRATION.
    That plaintiff did business in the marketing of said grape
    juice product under an assumed company name, without
    complying with the provisions of 2 Comp. Laws 1915, §
    6349 *et seq.*, would not preclude him from maintaining
    an action in his own name against the sheriff for un-

lawful conversion, since no contract of said company is involved in this action.

5. CHATTEL MORTGAGES—POSSESSION OF PROPERTY—REGISTRATION—
RENEWAL.

Where plaintiff, immediately upon the execution of the bill of sale, took and continuously retained possession of the property, the fact that he failed to file a renewal of the instrument recorded as a chattel mortgage within the statutory period of one year is, under the statute (3 Comp. Laws 1915, § 11988), unimportant.

6. TRIAL—INSTRUCTIONS—MISCARRIAGE OF JUSTICE.

*Held,* that the charge as a whole preserved all of the rights of the defendant and that the verdict as rendered gives no indication of miscarriage of justice.

Error to Van Buren; Des Voignes (L. Burget), J. Submitted January 6, 1920. (Docket No. 2.) Decided February 27, 1920.

Case by Harold B. Lawrence against Gladstone R. Beattie, sheriff of Van Buren county, for an unlawful conversion of certain personal property. Judgment for plaintiff. Defendant brings error. Affirmed.

*Glenn E. Warner,* for appellant.

*Thomas J. Cavanaugh,* for appellee.

Some time prior to the year 1913, one James Ingersoll Day was the owner of a farm and grape juice plant in Van Buren county. The farm was mortgaged; the mortgage had been foreclosed, but the equity of redemption had not expired. Day had gone into bankruptcy and one Netter had purchased from the trustee certain grape juice and barrels, then in the plant. In the year 1914, Day repurchased from Netter such juice and barrels as remained in the plant, the money necessary to make that purchase having been obtained from plaintiff in this case. To secure said advancement and other money due from Day to

plaintiff, Day executed to plaintiff a promissory note in the sum of $3,600, together with a bill of sale of the personal property in the plant. On September 18, 1914, there remained due on the obligation from Day to plaintiff the sum of $2,264. At that time, there was a large crop of grapes ready for harvesting on the Day farm. Day was without money or credit sufficient to enable him to harvest said crop and it was agreed between him and the plaintiff that the plaintiff should take a bill of sale of what remained of the Netter juice and barrels as well as of the grape crop then ready for harvesting. The consideration for this bill of sale was fixed at $4,314, it being estimated that the difference between the amount then due from Day to plaintiff and the amount named in the bill of sale would be necessary to harvest and juice the crop.

Plaintiff, immediately after the execution of said bill of sale, took possession of the juice plant, made the necessary repairs, hired a large force of pickers, imported an expert from Chicago to operate the plant and reduced the 1914 crop to a commercial product. He bought a large quantity of barrels as well as two or three carloads of glass and during the year 1915, from time to time, marketed more or less of the product. Being without sufficient funds to carry on the enterprise alone, he received financial assistance from his uncle, Archie Lawrence, as well as from one Wood, under an oral agreement with them that they should be repaid proportionately with himself from the proceeds of the juice. He continued in possession of the plant to the happening of the matters complained of in this case.

On January 20, 1916, Benjamin F. J. Odell caused a writ of attachment to be issued out of the circuit court of Van Buren county against the goods and chattels of James Ingersoll Day. The attachment suit.

resulted in a verdict in favor of Mr. Odell in the sum of $1,344. On June 27, 1916, an execution was issued on said judgment and defendant, Gladstone R. Beattie, the sheriff, on July 20, 1916, sold the personal property which he had seized by virtue of the writ of attachment. This personal property so seized and sold as the property of James Ingersoll Day was the same property mentioned in the bill of sale of September 18, 1914, between said Day and plaintiff, including such grape juice made from the 1914 crop as remained unsold. The sale was made over the protest of plaintiff that the property belonged to him. He thereupon brought this suit against the sheriff for unlawful conversion of said property, recovering, in the court below, a verdict in the sum of $750.

BROOKE, J. (*after stating the facts*). The first contention of the appellant is that the court erred in refusing to sustain an objection to the introduction of any evidence and in denying the motion for a directed verdict because it was not alleged in the declaration for whom the plaintiff was acting as trustee, and the assignment of the claims of Archie Lawrence and W. A. Wood to the plaintiff was not alleged or proved. The opening words of the declaration are, "Comes now Harold B. Lawrence, for himself and as trustee, plaintiff herein, and says" * * * Section 2, chapter 12, of the judicature act (3 Comp. Laws 1915, § 12353) provides:

"Every action shall be prosecuted in the name of the real party in interest, but an executor, administrator, guardian, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party expressly authorized by statute, may sue in his own name without joining with him the party for whose benefit the action is brought."

The bill of sale (the foundation of plaintiff's title)

is a straight out and out conveyance from James Ingersoll Day to plaintiff. The mere fact that as between himself and his uncle, Archie Lawrence, and W. A. Wood, there was an understanding that he held the title to the property in trust for himself and them did not preclude him from bringing the action as a real party in interest under the provisions of the act.

Appellant's next contention is that—

"Exhibit A. was given to secure a debt of $2,264, which existed prior to September 18, 1914. From a portion of that security, plaintiff realized $5,042.87. When the levy was made, Day's debt to plaintiff had been paid, plaintiff's lien satisfied and the security released."

While it is true plaintiff testified that if Day paid him the amount invested in the business he would have turned the same back to Day, yet, nevertheless, the transaction as evidenced by the contract was a plain sale of goods and chattels by one to another.

It is equally true that in the course of the dealings during 1915 plaintiff received upwards of $5,000 from the sale of the finished product, yet the investments made by him in the purchase of equipment, merchandise, and the payment of labor were such that, at the time the levy was made, there had been invested by him $5,266.61 in excess of the amount received. Assuming, then, that the bill of sale was executed merely as security (and the contrary was found by the jury), there never was a time when plaintiff had been repaid the amount of his original loan and the necessary advancements.

Appellant's next position is that growing grapes are *fructus naturales*, part of the real estate, and title thereof cannot be conveyed or a lien created thereon by a bill of sale or a chattel mortgage. We think it unimportant to determine whether growing grapes, ready for the harvesting, are *fructus naturales* or

*fructus industriales* because immediately following the execution of the bill of sale the plaintiff went into actual possession of the property, harvested the same, manufactured it and remained in possession thereof for upwards of a year thereafter.

It is contended by appellant that inasmuch as, during the year 1915, plaintiff did business in the marketing of the product under the name of the "Day Grape Juice Company" and that no compliance was made with Act No. 101 of the Public Acts of 1907 (2 Comp. Laws 1915, § 6349 *et seq.*), he is therefore precluded from maintaining this action. We are unable to see how the statute in question has anything to do with the case at bar. We are not considering a contract with the Day Grape Juice Company. No transfer of property was made to the Day Grape Juice Company. It had no interest so far as this record shows in the property in question. The bill of sale was made from Day to plaintiff; the property was taken by the sheriff from the plaintiff; and plaintiff, in his own name, brings action for its unlawful conversion.

It appears from the record that the bill of sale of September 18, 1914, was recorded by plaintiff as a chattel mortgage, but that a renewal thereof, dated September 24, 1915, was filed January 22, 1916. The statute (section 11988, 3 Comp. Laws 1915) provides:

"Every mortgage or conveyance intended to operate as a mortgage of goods and chattels which shall hereafter be made which shall not be accompanied by an immediate delivery and followed by an actual and continued change of possession of the things mortgaged shall be absolutely void as against the creditors of the mortgagor," etc.

Inasmuch as the record shows conclusively that immediately upon the execution of the bill of sale in question the plaintiff took and continuously retained possession of the property, the fact that he failed to

file a renewal of the instrument within the statutory period of one year is, in our opinion, unimportant.

Many exceptions are taken to the refusal of the court to charge as requested and to the charge as given. We have examined the charge carefully and are of the opinion that, taken as a whole, it preserved all of the rights of defendant and that the verdict, as rendered, gives no indication of miscarriage of justice.

The judgment is affirmed.

MOORE, C. J., and STEERE, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.